UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

JOSEPH Y.,[1]

      Plaintiff,

v.

COMMISSIONER OF SOCIAL SECURITY,

      Defendant.

20-CV-319-LJV
DECISION & ORDER

---

On March 16, 2020, the plaintiff, Joseph Y. ("Joseph"), brought this action under the Social Security Act ("the Act").  He seeks review of the determination by the Commissioner of Social Security ("Commissioner") that he was not disabled.  Docket Item 1.  On October 13, 2020, Joseph moved for judgment on the pleadings, Docket Item 9; on November 5, 2020, the Commissioner responded and cross-moved for judgment on the pleadings, Docket Item 11; and on November 27, 2020, Joseph replied, Docket Item 12.

For the reasons stated below, this Court grants Joseph's motion in part and denies the Commissioner's cross-motion.[2]

---

[1] To protect the privacy interests of Social Security litigants while maintaining public access to judicial records, this Court will identify any non-government party in cases filed under 42 U.S.C. § 405(g) only by first name and last initial.  Standing Order, Identification of Non-government Parties in Social Security Opinions (W.D.N.Y. Nov. 18, 2020).

[2] This Court assumes familiarity with the underlying facts, the procedural history, and the decision of the Administrative Law Judge ("ALJ") and will refer only to the facts necessary to explain its decision.

## **STANDARD OF REVIEW**

"The scope of review of a disability determination . . . involves two levels of inquiry." *Johnson v. Bowen*, 817 F.2d 983, 985 (2d Cir. 1987).  The court "must first decide whether [the Commissioner] applied the correct legal principles in making the determination." *Id*.  This includes ensuring "that the claimant has had a full hearing under the . . . regulations and in accordance with the beneficent purposes of the Social Security Act." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (alterations omitted) (quoting *Cruz v. Sullivan*, 912 F.2d 8, 11 (2d Cir. 1990)).  Then, the court "decide[s] whether the determination is supported by 'substantial evidence.'" *Johnson*, 817 F.2d at 985 (quoting 42 U.S.C. § 405(g)).  "Substantial evidence" means "more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)).  "Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles." *Johnson*, 817 F.2d at 986.

## **DISCUSSION**

Joseph argues that the ALJ erred in four ways.  Docket Item 9-1.  More specifically, Joseph argues that the ALJ erred by (1) including specific restrictions in

Joseph's residual functional capacity ("RFC")[3] that were not supported by the medical opinion or record evidence, (2) improperly evaluating Joseph's mental impairments, (3) incorrectly concluding that Joseph's fibromyalgia was not a medically determinable impairment, and (4) failing to apply the treating physician rule to the opinions of Joseph's primary care physician, Edgar Bassig, M.D.  *Id.* at 1.  This Court agrees that the ALJ erred in his analysis of Joseph's fibromyalgia and in his evaluation of Dr. Bassig's opinions.  Because those errors were to Joseph's prejudice, the Court remands the matter to the Commissioner.

## I.     FIBROMYALGIA

Social Security Ruling ("SSR") 12-2p "sets forth the following requirements for finding that fibromyalgia is a medically determinable impairment: (1) a physician has diagnosed fibromyalgia; (2) the physician has provided evidence described either by the 1990 American College of Rheumatology [("ACR") Criteria for the Classification of Fibromyalgia] or the 2010 ACR Preliminary Diagnostic Criteria; and (3) the physician's 'diagnosis is not inconsistent with other evidence in the person's case record.'" *Casselbury v. Colvin*, 90 F. Supp. 3d 81, 94 (W.D.N.Y. 2015) (quoting SSR 12-2p, 2012 WL 3104869, at *2 (July 25, 2012)).  Under the 1990 criteria, a claimant must show a history of widespread pain, at least eleven positive tender points out of eighteen identified tender-point sites, and evidence that other disorders that could cause the

---

[3] A claimant's RFC "is the most [she] can still do despite [her] limitations," 20 C.F.R. § 416.945, "in an ordinary work setting on a regular and continuing basis," *see Melville v. Apfel*, 198 F.3d 45, 52 (2d Cir. 1999) (quoting SSR 96-8P, 1996 WL 374184, at *2 (July 2, 1996)).  "A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent work schedule."  *Id.*

symptoms or signs were excluded.  *See id.* at *2-3.  Under the 2010 criteria, a claimant must show a history of widespread pain; repeated manifestations of six or more fibromyalgia symptoms, signs, or co-occurring conditions; and evidence that other disorders that could cause those symptoms, signs, or co-occurring conditions were excluded.  *See id.* at *3.

If a claimant satisfies the other requirements of SSR 12-2p, meeting either the 1990 or the 2010 criteria is sufficient to establish that the claimant has a medically determinable impairment of fibromyalgia.  *See Selian v. Astrue*, 708 F.3d 409, 419 n.3 (2d Cir. 2013) (per curiam); *Cooper v. Comm'r of Soc. Sec.*, 2019 WL 1109573, at *4 (W.D.N.Y. Mar. 11, 2019).  Therefore, before deciding that a claimant does not have fibromyalgia, an ALJ must analyze both the 1990 and the 2010 criteria.  *See Kirah D. v. Berryhill*, 2019 WL 587459, at *6-7 (N.D.N.Y. Feb. 13, 2019).

Here, the ALJ determined that although Joseph "has been diagnosed with fibromyalgia," he "d[id] not have the medically determinable impairment of fibromyalgia." Docket Item 7-16 at 9.  But the ALJ did not address which of the specific 1990 or 2010 criteria Joseph failed to meet, let alone address both sets of criteria in any detail.  Indeed, after reviewing some of Joseph's medical records and noting Joseph's diagnosis, the ALJ simply concluded that Joseph "d[id] not satisfy the requirements of SSR 12-2p."  *Id.* at 8-9.  That is simply not enough.

The Commissioner argues that Joseph's challenge to the ALJ's conclusion "lacks merit because . . . [Joseph] did not meet either the 1990 or the 2010 ACR criteria." Docket Item 11-1 at 14.  But an ALJ's "conclusory findings" about whether a claimant has a medically determinable impairment of fibromyalgia "preclude[s] meaningful review

4

of the ALJ's step two findings." *Diaz v. Comm'r of Soc. Sec.*, 2019 WL 2401593, at *4 (W.D.N.Y. June 7, 2019).  And that is true even when the medical evidence does not explicitly satisfy the criteria in SSR 12-2p.  *See id.* (remanding when the "record [] reflect[ed] that [the claimant] showed tenderness throughout her body on different occasions," even though "there [was] no evidence that [her] doctors specifically tested for tender-point sites").

And the medical evidence suggested that Joseph's fibromyalgia may well have been a medically determinable impairment.[4]  He consistently reported widespread pain to his doctors.  *See, e.g.*, Docket Item 7-8 at 103 (April 2013 exam notes showing that Joseph reported arthralgia), 120 (July 2013 exam notes reporting that Joseph "state[d] he's still experiencing diffuse arthralgia and myalgia").[5]  He offered evidence of tender points (albeit of unclear location and number and sometimes before the alleged disability onset date).[6]  *See, e.g.*, Docket Item 7-7 at 98 (April 2012 record noting

---

[4] Joseph challenges the ALJ's decision on the ground that his fibromyalgia was a medically determinable impairment under the 1990 criteria; he does not argue that he satisfied the 2010 criteria.  *See* Docket Item 9-1 at 41-47.  This Court therefore limits its consideration to record evidence relevant to the 1990 criteria.

[5] Arthralgia "describes joint stiffness."  *Arthralgia*, Johns Hopkins Med., https://www.hopkinsmedicine.org/health/conditions-and-diseases/arthralgia (last visited Jan. 13, 2022).  "Myalgia describes muscle aches and pain, which can involve ligaments, tendons and fascia, the soft tissues that connect muscles, bones and organs."  *Myalgia*, Johns Hopkins Med., https://www.hopkinsmedicine.org/health/conditions-and-diseases/myalgia (last visited Jan. 13, 2022).

[6] The Commissioner argues that some of the medical records reflecting Joseph's tender points are "immaterial" because they precede Joseph's alleged disability onset date.  Docket Item 11-1 at 15.  But that does not necessarily make these notes and records irrelevant.  *See Hurdis v. Colvin*, 2014 WL 6982298, at *10 (W.D. Wis. Dec. 10, 2014) ("The ALJ's apparent failure to even consider pre-[disability onset date] evidence

5

"multiple tender points"), 101 (June 2012 record reflecting "multiple tender points at the posterior cervical region, trapezius, upper and lower back, as well as lateral elbows and medial knees"); Docket Item 7-21 at 107 (March 2015 record reporting "prominent trigger points throughout the cervical and thoracic musculature"). And his doctors noted that his symptoms likely were due to fibromyalgia. See, e.g., Docket Item 7-7 at 89 (March 2013 record noting probable fibromyalgia), 98 (April 2012 record noting a "clinical picture of fibromyalgia"), 104 (August 2012 record noting that Joseph's "complaints appear to be consistent with fibromyalgia"), 110 (December 2012 record concluding that Joseph's "complaints[] . . . appear[] to be fibromyalgia picture"), 120 (April 2013 record including fibromyalgia as an assessment), 175 (same in February 2013); Docket Item 7-14 at 112 (July 2014 record noting that Joseph "does have a picture of fibromyalgia[-]type findings on his clinical exam"); Docket Item 7-35 at 56 (February 2015 record including fibromyalgia as an ongoing diagnosis).

But the ALJ did not discuss why that medical evidence failed to satisfy the 1990 or 2010 criteria. He did not say whether—and if so, why—he disagreed with the physicians' repeated diagnoses of fibromyalgia. And he did not even try to clarify anything that was unclear about the evidence, as SSR 12-2p directs an ALJ to do when the record is ambiguous about whether a claimant's fibromyalgia is a medically determinable impairment. See Janine H. v. Comm'r of Soc. Sec., 2021 WL 1185872, at *3 (W.D.N.Y. Mar. 30, 2021) ("SSR 12-2p . . . 'directs an ALJ to take additional steps, such as recontacting the claimant's treating physicians, when the record lacks adequate

---

and post-[insured status date] evidence . . . would arguably mandate remand of this case on that ground alone . . . .").

information to determine whether the claimant has a medically determinable impairment of fibromyalgia.'" (quoting *Cooper*, 2019 WL 1109573, at *4).

Because of all that, the Court is left with nothing more than the ALJ's say-so that Joseph's fibromyalgia was not a medically determinable impairment under SSR 12-2p. This Court therefore "is unable to meaningfully review the ALJ's reasoning that [Joseph's] fibromyalgia was not a medically determinable impairment." *See Heineck-Polizzi v. Comm'r of Soc. Sec.*, 2020 WL 1284017, at *5 (W.D.N.Y. Mar. 18, 2020).  And for that reason, remand is required.[7]  *See id.*

---

[7] The Commissioner argues that remand is inappropriate because "the ALJ considered [Joseph's] fibromyalgia at subsequent steps of the sequential evaluation process." Docket Item 11-1 at 16.  "Although the Commissioner is correct that an error at step two may be harmless if the ALJ identifies other severe impairments at the second step and proceeds to consider[] any non-severe impairments at the remaining steps, the ALJ's error in this case stemmed not from a severity conclusion, but from the conclusion that [Joseph's] fibromyalgia is not even a medically determinable impairment." *Cooper*, 2019 WL 1109573, at *5 (citation omitted).  And as the Commissioner notes, the ALJ then discredited Joseph's subjective reports of his symptoms.  *See* Docket Item 11-1 at 15; Docket Item 7-16 at 21 (concluding Joseph's "reports of pain" were "not consistent with [] repeated examination findings").  That is the very problem implicated by an ALJ's determination at step two that a claimant's fibromyalgia is not a medically determinable impairment.  *See Cooper*, 2019 WL 1109573, at *5 ("[B]ecause the ALJ concluded that [the claimant's] fibromyalgia [was] not a medically determinable impairment, she had no basis to credit [her] statements regarding her fibromyalgia-related symptoms.").  Because fibromyalgia can "elude[] objective measurement," *see Campbell v. Comm'r of Soc. Sec.*, 2017 WL 9509958, at *6 (N.D.N.Y. Apr. 14, 2017) (alterations and citation omitted), *report and recommendation adopted*, 2017 WL 2304218 (N.D.N.Y. May 26, 2017), incorrectly excluding the possibility of fibromyalgia and then discounting a claimant's reports of pain as unsupported by the medical findings is error; that is, if a claimant has fibromyalgia, then the complaints of pain might indeed be supported by the medical findings.

7

## II.     TREATING PHYSICIAN RULE

When determining a claimant's RFC, an ALJ must evaluate every medical opinion received.  20 C.F.R. § 416.927(c).  But an ALJ generally should give greater weight to the medical opinions of treating sources—physicians, psychologists, optometrists, podiatrists, and qualified speech-language pathologists who have "ongoing treatment relationship[s]" with the claimant—because those medical professionals are in the best positions to provide "detailed, longitudinal picture[s] of [the claimant's] medical impairment[s]."  *See* 20 C.F.R. § 404.1527(a)(2), (c)(2); *see also Genier v. Astrue*, 298 F. App'x 105, 108 (2d Cir. 2008) (summary order).  In fact, a treating physician's opinion is entitled to controlling weight so long as it is "well-supported [sic] by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the claimant's] case record."  20 C.F.R. § 404.1527(c)(2).

Before an ALJ may give less-than-controlling weight to a treating source's opinion, the ALJ must "explicitly consider, *inter alia*: (1) the frequency, length, nature, and extent of treatment; (2) the amount of medical evidence supporting the opinion; (3) the consistency of the opinion with the remaining medical evidence; and[] (4) whether the physician is a specialist."  *Greek v. Colvin*, 802 F.3d 370, 375 (2d Cir. 2015) (alterations and internal quotation marks omitted).  These are the so-called "*Burgess* factors" from *Burgess v. Astrue*, 537 F.3d 117 (2d Cir. 2008).  *Estrella v. Berryhill*, 925 F.3d 90, 95-96 (2d Cir. 2019).  "An ALJ's failure to 'explicitly' apply the *Burgess* factors when assigning weight" to a treating source opinion "is a procedural error."  *Id.* at 96 (quoting *Selian*, 708 F.3d at 418).

The ALJ acknowledged five opinions by Dr. Bassig, one of Joseph's treating physicians.  *See* Docket Item 7-16 at 19; Docket Item 7-8 at 19, 39-53, 55-59; Docket Item 7-22 at 80-82.  The first three of those opinions were provided in 2013; the final two in 2016 and 2018.

In February 2013, Dr. Bassig opined that Joseph was unable to work, tentatively finding that Joseph could return to work in June 2013.  Docket Item 7-8 at 19; Docket Item 7-22 at 80.  In May 2013, Dr. Bassig completed a medical opinion and RFC questionnaire detailing Joseph's work-related restrictions, including on sitting, standing, and walking.  *See* Docket Item 7-8 at 39-53, 55-59.  In that opinion, Dr. Bassig noted that Joseph could stand or walk for less than a total of two hours per day and could sit for less than a total of six hours per day.  *Id.* at 49.  And in that RFC questionnaire, Dr. Bassig noted that Joseph could sit or stand for only ten minutes at a time and could sit, stand, or walk for less than two hours in an eight-hour workday; that he needed to walk for ten minutes every ten minutes during the day; and that he needed an unscheduled break and to lift his legs every ten to fifteen minutes.[8]  *Id.* at 56-57.

In February 2016, Dr. Bassig opined that Joseph was unable to work due to "multiple medical conditions."  Docket Item 7-22 at 81 (capitalization removed).  Finally, in May 2018, Dr. Bassig noted that Joseph was permanently disabled and severely

---

[8] The ALJ denied Joseph's first application for benefits after he determined that Dr. Bassig's May 2013 opinions were inconsistent with one another and afforded them less-than-controlling weight.  *See* Docket Item 7-2 at 29-42.  Joseph then challenged that decision, and this Court accepted and adopted the report and recommendation of United States Magistrate Judge Hugh B. Scott to remand the case.  *See* Docket Item 7-17 at 36-46.

limited in his ability to walk due to arthritic, neurological, and orthopedic conditions. *Id.* at 82.

The ALJ gave all these opinions "little weight" because they were "not supported by [Dr. Bassig's] own examination findings" and were "not consistent with the opinion of the internal medicine consultative examiner . . . or the examination findings from Dent Neurology or Invision Health." Docket Item 7-16 at 19-20. But in reaching that conclusion, the ALJ did not address any findings that "support[ed] [Dr. Bassig's] opinion[s]," thus omitting a required *Burgess* factor. *See Greek*, 802 F.3d at 375. Moreover, when the ALJ determined that Dr. Bassig's opinions were inconsistent "with the opinion of the internal medicine consultative examiner . . . [and] the examination findings from Dent Neurology or Invision Health," he did not say what in those opinions and records were inconsistent with Dr. Bassig's opinions—or even identify which of Dr. Bassig's opinions were supposedly inconsistent.[9] *See* Docket Item 7-16 at 20; *see also Crutch v. Colvin*, 2017 WL 3086606, at *8 (E.D.N.Y. July 19, 2017) (treating physician rule requires "specific citations to the medical record identifying specific portions that are inconsistent").

---

[9] Rejecting or discounting the opinion of a treating physician because it is inconsistent with the opinion of a consultant who examined the claimant only once is particularly troubling. *See Selian*, 708 F.3d at 419 ("We have previously cautioned that ALJs should not rely heavily on the findings of consultative physicians after a single examination."); *see also Colgan v. Kijakazi*, 2022 WL 18502, at *6 (2d Cir. Jan. 3, 2022) ("[A]n ALJ commits legal error in resting his disability determination on 'a one-time snapshot of a claimant's status.'" (quoting *Estrella*, 925 F.3d at 98)). When an ALJ chooses to give more credit to a one-time examiner than to a provider who has seen a claimant over a number of years, the ALJ certainly should explain in some detail why that is so. *See Estrella*, 925 F.3d at 98. Here, when he assigned Dr. Bassig's opinion little weight, the ALJ did not even explain in what ways Dr. Bassig's opinion was inconsistent with that of the one-time consultant, let alone detail why he chose to credit the latter more than the former.

"Because the ALJ procedurally erred, the question becomes whether 'a searching review of the record assures [this Court] that the substance of the [treating physician] rule was not traversed'—*i.e.*, whether the record otherwise provides 'good reasons' for assigning 'little weight'" to Dr. Bassig's opinion.  *See Estrella*, 925 F.3d at 96 (alterations omitted) (quoting *Halloran v. Barnhart*, 362 F.3d 28, 32 (2d Cir. 2004)); *see also Zabala v. Astrue*, 595 F.3d 402, 410 (2d Cir. 2010) (declining remand where "application of the correct legal principles to the record could lead [only to the same] conclusion").  The Court finds no such assurance here.

First, Dr. Bassig's opinions about Joseph's physical limitations were consistent with one another—strong evidence of their validity.  In his May 2013 opinion, Dr. Bassig selected the most restrictive limitations listed on the form as to Joseph's ability to sit, stand, and walk over an eight-hour day.  *See* Docket Item 7-8 at 49 (opining that Joseph could stand or walk for less than two hours per day and sit for less than six hours per day).  Likewise, in the May 2013 RFC questionnaire, Dr. Bassig chose the most restrictive limitations listed for sitting, standing, and walking.  *See id.* at 57 (opining that Joseph could sit, stand, or walk for less than two hours per day).  And Dr. Bassig also noted other restrictions in Joseph's ability to sit, stand, and walk over the course of an eight-hour day.  *See id.* (noting Joseph's need to take walks and unscheduled breaks during an eight-hour workday and opining that Joseph needs a job that permits shifting positions at will and that he should elevate his legs with prolonged sitting).

Dr. Bassig's opinions also were consistent with several opinions from Gosy & Associates, Joseph's pain treatment providers.  Eugene J. Gosy, M.D., and Jerry J. Tracy III, M.D. consistently remarked that Joseph was an "excellent candidate" for

11

disability benefits because of his "chronic pain."  *See, e.g.*, Docket Item 7-7 at 119 (April 2013 record noting Joseph's "chronic pain in the thoracic and lumbar region"); Docket Item 7-9 at 132 (July 2013 record reflecting Joseph's "chronic pain and poor functional status"); Docket Item 7-14 at 105 (same in April 2014), 113 (same in July 2014).  Likewise, Laszlo Mechtler, M.D., a neurologist, agreed and found that Joseph appeared to be "totally disabled."  Docket Item 7-35 at 36.[10]

Not only were Dr. Bassig's opinions supported by the record, they also were not necessarily contradicted by the records that the ALJ cited as inconsistent.  For example, the ALJ afforded little weight to Dr. Bassig's opinions on Joseph's "inability to sit, stand, and walk for eight hours total" and his "need for unscheduled breaks[] and . . . to elevate [his] legs" because those opinions were "not supported by [Dr. Bassig's] own examination findings."  Docket Item 7-16 at 20.  But contrary to the ALJ's observation, Dr. Bassig's treatment notes from around the time he offered these opinions indeed reflected abnormalities on physical examination.  *See, e.g.*, Docket Item 7-8 at 5 (May 2013 treatment notes reflecting abnormalities in musculoskeletal system); 8 (same in April 2013), 11 (same in March 2013).  While the ALJ referred to some of these findings

---

[10] Although the ALJ "considered" these records, *see* Docket Item 7-16 at 10, 17-18, he assigned Dr. Mechtler's, Dr. Tracy's, and Dr. Gosy's opinions "little weight" because "the determination of disability is an issue reserved to the Commissioner[] and the providers did not identify [] specific functional limitations."  *Id.* at 20.  The ALJ is correct that opinions about the ultimate issue reserved to the Commissioner are not "medical opinions" as that term of art is used in the Social Security context and therefore are not entitled to deference even when offered by a treating physician. *See* 20 C.F.R. § 404.1527(d).  But the ALJ still must analyze what is behind the opinion or recontact the provider to request a translation of the opinion into language that fits the Social Security context.  *See Snell v. Apfel*, 177 F.3d 128, 133 (2d Cir. 1999) (the fact that the "ultimate finding of whether a claimant is disabled" is "reserved to the Commissioner . . . means that the Social Security Administration *considers the data that physicians provide* but draws its own conclusions" (emphasis added)).

12

in his decision, *see* Docket Item 7-16 at 16-17, he made no mention of them in assigning weight to Dr. Bassig's opinion, *see id.* at 19-20.

The Commissioner argues that the ALJ had good reason to discount Dr. Bassig's opinions because the physical limitations in Dr. Bassig's 2013 opinions were inconsistent with Joseph's "*own reports* of his abilities." Docket Item 11-1 at 20 (emphasis in original). More specifically, the Commissioner contends that Joseph's testimony at the August 2019 hearing—that he could sit "somewhere between an hour to sometimes [an] hour and a half" at one time and could stand for "[m]aybe 15 to 45 minutes," Docket Item 7-16 at 46—contradicted Dr. Bassig's opinions and supported the ALJ's RFC determination. Docket Item 11-1 at 20.

But Joseph's hearing testimony about how long he could sit *at one time* did not necessarily contradict Dr. Bassig's opinion that the *total* amount of time that Joseph could spend sitting in any eight-hour day was limited to less than two hours. In other words, the fact that Joseph could sit for an hour or so at a time might be inconsistent with Dr. Bassig's findings about the aggregate amount of time that Joseph could sit in any one day, but it very well might not. Nor were Dr. Bassig's opinions inconsistent with Joseph's testimony about the amount of time he could stand. Joseph testified that he could stand for "[m]aybe 15 to 45 minutes" before immediately clarifying that he would not stand for forty-five minutes "voluntarily" because if he did so, his "pain would definitely be increased." Docket Item 7-16 at 46. That testimony does not necessarily contradict Dr. Bassig's limitations on the amount of time that Joseph could stand over the course of an eight-hour workday in a "competitive work situation," *see* Docket Item

13

7-8 at 56-57—particularly because Joseph never testified about his ability to stand for forty-five minutes with "increased" pain and still work.

What is more, limiting the weight given to Dr. Bassig's opinions likely inured to Joseph's prejudice. Dr. Bassig opined that Joseph had significant restrictions in the total amount of time that he could sit, stand, or walk over the course of an eight-hour day—restrictions that were absent from the RFC. In other words, if the ALJ had given controlling weight to Dr. Bassig's opinions, that necessarily would have changed the RFC and might well have resulted in a finding that Joseph was disabled.

In sum, the ALJ erred in failing to address all the *Burgess* factors when assigning "little weight" to Dr. Bassig's opinions. That error likely prejudiced Joseph. And that warrants remand here. *See Manuel v. Comm'r of Soc. Sec.*, 2020 WL 2703442, at *4 (W.D.N.Y. May 26, 2020) (remanding where the ALJ failed to consider an opinion that "could have resulted in a finding of disability . . . if given weight by the ALJ" (citation omitted)).

## **CONCLUSION**

The ALJ erred in addressing the possibility of fibromyalgia and in evaluating Dr. Bassig's opinions.[11] The Commissioner's motion for judgment on the pleadings, Docket Item 11, therefore is DENIED, and Joseph's motion for judgment on the pleadings,

---

[11] The Court "will not reach the remaining issues raised by [Joseph] because [they] may be affected by the ALJ's treatment of this case on remand." *Watkins v. Barhart*, 350 F.3d 1297, 1299 (10th Cir. 2003). But on remand, the ALJ should consider the consistency of any mental health opinions with the entire record and should ensure that any restrictions in Joseph's RFC—including any mental limitations—are based on evidence in the record.

Docket Item 9, is GRANTED in part and DENIED in part.  The decision of the Commissioner is VACATED, and the matter is REMANDED for further administrative proceedings consistent with this decision.

    SO ORDERED.

Dated:    January 13, 2022
           Buffalo, New York

                          */s/ Lawrence J. Vilardo*
                          LAWRENCE J. VILARDO
                          UNITED STATES DISTRICT JUDGE